# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

JEFFREY G. REISEN,

    Plaintiff,

vs.

WASH DEPOT XXI, INC.,

    Defendant.

No. C04-1044

**ORDER**

_____

This matter comes before the court pursuant to (1) Defendant Wash Depot XXI, Inc.'s August 5, 2005 motion to strike expert witness (docket number 20); (2) Defendant's August 11, 2005 second motion to compel (docket number 24); (3) Plaintiff Jeffrey Reisen's August 10, 2005 motion to compel (docket number 23); (4) Plaintiff's August 23, 2005 motion to amend/correct the complaint (docket number 29); and (5) Defendant's August 25, 2005 motion for extension of time for scheduling order deadlines of Defendant's experts and Plaintiff's rebuttal experts (docket number 31).

## I. Plaintiff's Motion to Amend/Correct Complaint

The plaintiff moves to amend the Complaint to add a claim for constructive discharge. In support of his motion, the plaintiff contends that a claim for constructive discharge is supported by the following factual allegations:

    1.    Managers employed with the defendant would "often mock" the plaintiff, commenting that the plaintiff was not at work "again" and must be "fulfilling his other duties" in a mocking tone.

    2.    Managers accused the plaintiff of using military leave for personal vacation time.

3. The plaintiff was unhappy with his position after being demoted and "work did not appear to be a team effort any longer."
4. The defendant often gave the plaintiff "difficulty when he needed time off work for his military obligations" and told the plaintiff that it was "bad timing" for military leave. After asking for military leave, the plaintiff's supervisor would not speak with the plaintiff.
5. The plaintiff's immediate supervisor asked the plaintiff which was his "bread and butter job," his employment with the defendant or the military.
6. The plaintiff's supervisor "didn't agree with [the plaintiff's] military obligations, was not positive about the obligations, and displayed a negative attitude towards [the plaintiff] because of the military."
7. The plaintiff's managers often complained about the plaintiff's military obligations indicating that the plaintiff was not putting in his share of hours, and not working enough because of his military obligations.
8. The plaintiff's supervisor admitted that the plaintiff was demoted because of his military obligations.

The defendant resists, arguing that (1) the plaintiff's motion to amend/correct "cites no authority, and does not comply with the local rules"[1]; (2) the plaintiff is guilty of undue delay; (3) "allowing amendment at this late date, at the close of fact discovery would prejudice [the defendant]"; and (4) the plaintiff has no colorable claim for constructive discharge.

Fed. R. Civ. P. 15(a) provides that leave to amend shall be freely given when justice so requires. The Supreme Court has stated that the granting of leave to amend is within the discretion of the district court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). However, in the absence of a good reason for the denial of the

---

[1] Specifically, the defendant asserts that the plaintiff's motion to amend/correct fails to comply with LR 7.1(d) which requires a moving party to file a brief containing a brief statement of the grounds for the motion and citation to the authority upon which he relies. The defendant points out that the plaintiff failed to so cite to any authority.

motion, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility of the amendment, denial of leave to amend is an abuse of discretion. Foman v. Davis, 371 U.S. 178, 182 (1962).

The plaintiff's motion to amend the Complaint is granted. At this early juncture in the proceedings, the court cannot say that the amendment, specifically adding a claim for constructive discharge, would be futile. Moreover, there is no evidence of undue delay, bad faith, dilatory motive, or prejudice to the defendant by allowing the amendment.

## II. Defendant's Motion to Strike Plaintiff's Expert

Under Federal Rule of Evidence 702, "a trial judge, in admitting expert testimony, has a gatekeeping responsibility to 'ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Hartley v. Dillards, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Hartley, 310 F.3d at 1061 (citing Bonner v. ISP Tech., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995)). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Id. (citing Bonner, 259 F.3d at 929-30) (quoting Hose, 70 F.3d at 974).

The defendant moves to strike the testimony and reports of the plaintiff's expert witness, Mel Miller. Mr. Miller is the Chief Investment Officer of Heartland Financial USA, Inc. and has been retained by the plaintiff as an economic damages/lost earnings expert. According to the plaintiff, if allowed to testify at trial, Mr. Miller will testify about the plaintiff's lost earnings following his demotion. Mr. Miller is also expected to

compare the plaintiff's current compensation to the compensation he received prior to being demoted by the defendant. In sum, Mr. Miller will testify about the plaintiff's past and future lost wages. Mr. Miller utilizes the "total offset method" when determining the plaintiff's future wage loss.

The defendant contends that Mr. Miller's testimony and reports should be stricken because (1) Mr. Miller's "reasoning and methodology are not scientifically valid"; (2) Mr. Miller's testimony "is not based on sufficient facts and data, as required by FRE 703"; (3) Mr. Miller's initial report "is irrelevant to this lawsuit, since it provides opinions about lost wages after [the plaintiff] quit, which are not recoverable in this lawsuit"; and (4) Mr. Miller's supplemental report is based "solely on an instruction from [the plaintiff's] attorney, and not on any analysis by [Mr. Miller]." The court sets forth each of the defendant's contentions in turn.

First, the defendant contends that Mr. Miller's testimony and reports should be stricken because his "reasoning and methodology are not scientifically valid." In support of this contention, the defendant asserts first that a review of Mr. Miller's report indicates that he applied "no scientific or specialized knowledge in arriving at his opinions." The defendant next asserts that Mr. Miller, when asked if he used any particular scientific method, answered that he was "consistent in [his] assumption as far as discount rate and future inflation rate in all the cases [he had] worked on, and [he felt] that this is a valid approach to take and calculate present value loss of earnings." Mr. Miller's approach in this regard, according to the defendant, is tantamount to subjective belief or unsupported speculation, neither of which are sufficient to withstand a <u>Daubert</u> challenge.[2] The defendant further asserts that Mr. Miller's reasoning and methodology are not scientifically valid because Mr. Miller's methodology has never been tested or subjected to peer review, and when asked for the error rate associated with his methodology, Mr. Miller replied that

---

[2] The defendant cites to <u>Chapman v. Maytag Corp.</u>, 297 F.3d 682, 687 (7th Cir. 2002); <u>Cummins v. Lyle Industries</u>, 93 F.3d 362, 368 (7th Cir. 1996).

4

there was "no way to determine" such error rate. The defendant further points out that when asked if there was any literature discussing his technology and method, Mr. Miller replied that he was "sure there [were]," but could not cite any references.

Second, the defendant contends that Mr. Miller's testimony should be stricken because it is not based on sufficient facts and data as required by FRE 702. Specifically in regard to Mr. Miller's initial report concerning the plaintiff's lost earnings, the defendant asserts that this report should be stricken because (1) Mr. Miller did relied on compensation figures provided by counsel for the plaintiff, without conducting an independent inquiry into those figures to gauge their accuracy; (2) Mr. Miller's initial report was flawed because it did not include an analysis of the plaintiff's earnings asa reconditioning manager and Mr. Miller was unaware that the plaintiff had voluntarily quit his job at Simoniz to take a job with John Deere; (3) Mr. Miller, in arriving at his opinions concerning the plaintiff's lost wages, did not review the Complaint, Answer, documents relating to the plaintiff's earnings history at Simoniz or the earnings of other Simoniz managers, documents relating to the plaintiff's pay and benefits at John Deere or his second job with Per Mar Security, the plaintiff's tax returns or W-2's, the collective bargaining agreement which governs the plaintiff's employment at John Deere, or the benefit plans provided by Simoniz or John Deere; (4) in calculating the lost earnings, Mr. Miller did not include the plaintiff's income from his employment with Per Mar Security, and failed to consider "the eight hours of overtime per week that [the plaintiff] now works at John Deere"; and (5) Mr. Miller did not consider any of the fringe benefits that the plaintiff is eligible for at John Deere,[3] "even those that were cash payments."

---

[3] The defendant lists these benefits as including cheaper health benefits, potential bonuses, 401(k) matching, overtime paid at a rate of time and a half, pay during layoffs, pay during military leave, raises, potential promotions, Union protections and bargaining power, moonlighting pay from work at Per Mar Security, and "monetary fringe benefits that would have resulted in additional compensation."

5

Third, the defendant contends that Mr. Miller's initial loss of earnings report should be stricken because it is irrelevant to the plaintiff's allegations, as the plaintiff "cannot claim lost wages after he quit" his employment with the defendant. Specifically, the defendant argues that the information contained in Mr. Miller's report does not relate in any way to the plaintiff's claim that he was demoted because of his service in the Naval Reserves. The defendant asserts that because the plaintiff has admitted that he voluntarily quit his job to work at John Deere a few months after he was demoted, "the plaintiff cannot recover lost wages as back pay or front pay after he quit, and he cannot present expert testimony which purports to calculate those lost amounts." Accordingly, the defendant argues that any portion of Mr. Miller's expected testimony and reports which focus on lost wages for the time period after the plaintiff left his job with the defendant are completely irrelevant and should be stricken.

Finally, the defendant contends that Mr. Miller's supplemental loss of earnings report, concerning a 13-week period of the plaintiff's lost wages, should be stricken because it represents "nothing but a statement of [the plaintiff's] wishes." Specifically, the defendant asserts that Mr. Miller expressed confusion during his deposition as to what 13-week period of time was concerned in the report, and had to be told by counsel for the plaintiff that it represented the time period for which the plaintiff was working at Wash Depot in his demoted position as reconditioning manager. The defendant asserts that Mr. Miller's confusion illustrates the fact that his supplemental report is "based on no analysis whatsoever, and is just a restatement of [the plaintiff's] claims." Accordingly, the defendant argues, Mr. Miller should not be allowed to testify to the opinions contained in his supplemental loss of earnings report at trial.

The plaintiff resists, arguing that (1) Mr. Miller's methodology is sound and has been approved by numerous courts; (2) Mr. Miller's education and experience qualify him as an expert witness; (3) Mr. Miller's calculations and the "total offset method" meet the standard for admissibility; (4) Mr. Miller's technical and specialized knowledge will assist

6

the jury in determining the plaintiff's wage loss; (5) the defendant's attacks on the factual assumptions underlying Mr. Miller's conclusions go to the weight of his testimony, not to its admissibility; and (6) Mr. Miller's future wage loss calculations are indeed relevant because the plaintiff is entitled to front pay even though he voluntarily resigned from his employment with the defendant.

First, the plaintiff argues that Mr. Miller's testimony and reports should not be stricken because his methodology is "sound and approved by the court." The plaintiff asserts that the "total offset method," which Mr. Miller uses in calculating the plaintiff's lost income damages, has been approved by both state and federal courts in Iowa.[4] The plaintiff further asserts that Mr. Miller's assumptions concerning inflation and discount rates, productivity gains, comparisons between current earnings and earnings prior to demotion, and the number of years that the plaintiff is expected to remain in the workforce, are all appropriate assumptions and have been approved of by the courts.

Second, the plaintiff argues that Mr. Miller's education and experience qualify him as an expert witness. That education and experience includes, (1) Mr. Miller currently serves as Senior Vice President and Chief Investment Officer for Heartland Financial, USA, Inc.; (2) he obtained a B.S. degree in management and an M.B.A. in finance; (3) Mr. Miller completed additional coursework in accounting and financial planning; (4) he attended the Prochnow Graduate School of Banking at the University of Wisconsin since obtaining his M.B.A.; (5) Mr. Miller has worked in and served the financial community since 1965 and has been an educator in financial matters since 1971; (6) he is an adjunct professor in the M.B.A. program at the University of Dubuque; (7) Mr. Miller received a designation as Chartered Financial Analyst in 1988; (8) he is a member of the

---

[4] The plaintiff cites Prine v. Sioux City Community School District, 95 F. Supp. 2d 1005, 1015 (N.D. Iowa 2000) (citing Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 544-46 (1983); Schnebly v. Baker, 217 N.W.2d 708, 728 (Iowa 1974) (reversed on other grounds); Gleason v. Keuker, 641 N.W.2d 553, 556 (Iowa Ct. App. 2001).

Financial Analysts Society of Chicago; (9) Mr. Miller received honors in the 26th Edition of Who's Who in Finance and Industry; and (10) he has extensive experience testifying as an expert witness in courts of this jurisdiction as well as others, and has never been disqualified as an expert witness.

Third, the plaintiff argues that Mr. Miller's calculations and his use of the "total offset method" meet the Daubert standard for admissibility. Specifically, the plaintiff asserts that Mr. Miller's wage loss calculations "are not a scientific theory, but rather a mathematical calculation," and accordingly, some of the Daubert considerations are not wholly applicable, while other, additional considerations, may be.[5] The plaintiff argues that "[b]ecause Mr. Miller's analysis is merely a mathematical calculation, there is inherently no margin of error," and the "only room for error are errors in background information Mr. Miller relies upon."[6] The plaintiff contends that such errors, based on faulty or incomplete information, go to the weight to be accorded to Mr. Miller's testimony, not to the admissibility of it.

Fourth, the plaintiff argues that Mr. Miller's testimony and reports should not be stricken because his technical and specialized knowledge will assist the trier of fact in determining the plaintiff's wage loss. Specifically, the plaintiff asserts that Mr. Miller will be of assistance by performing multiplication functions to illustrate the plaintiff's wage loss, utilizing the "total offset method," and providing support for the assumptions inherent in the "total offset method." The plaintiff further asserts that, contrary to the defendant's contention, there is no requirement that an expert always cite published studies, no

---

[5] The plaintiff cites to Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kannenkeril v. Terminex International, Inc., 128 F.3d 803, 809 (3d Cir. 1997); Tyus v. Urban Search Management, 102 F.3d 256 (7th Cir. 1996)).

[6] According to the plaintiff, Mr. Miller readily concedes that his calculations are based upon assumptions regarding the plaintiff's current and past earnings, and that any changes in those current and past earnings would necessarily change his calculations.

requirement that the expert publish studies to support his opinions, and no requirement that the expert resolve an ultimate issue of fact to a scientific absolute.[7]

Fifth, the plaintiff argues that the defendant's attacks on the factual assumptions underlying Mr. Miller's conclusions go to the weight of his testimony, not to the admissibility. Specifically, the plaintiff asserts that "[a]ssuming for argument purposes only the information Mr. Miller relies upon . . . is inaccurate or incomplete, this attack goes to the weight of Mr. Miller's testimony, not its admissibility." The plaintiff argues that while the defendant has made no showing that the information relied upon by Mr. Miller is incorrect, "if later evidence suggests [that such information] was incorrect or incomplete, Mr. Miller may change his opinion based upon the updated information." The plaintiff further asserts that if Mr. Miller's calculations are incomplete, it is only because the defendant has refused to forward the complete and accurate "information necessary to accurately calculate [the plaintiff's] wage loss." For example, while the plaintiff concedes that information concerning bonuses is necessary to determine the plaintiff's wage loss, the defendant has only provided bonus information from the year 2000 through the year 2002.[8]

Finally, the plaintiff argues that Mr. Miller's future wage loss calculations are relevant, because the plaintiff is entitled to front pay even though he resigned from his employment with the defendant. The plaintiff points out first that he performed in his demoted position with the defendant for "several months" before he accepted employment with John Deere, and that such time should certainly be considered in determining the plaintiff's lost wages. The plaintiff further asserts that although his employment with John Deere pays more than his demoted position with the defendant paid, his position with

---

[7] The plaintiff cites to Bonner v. ISP Technologies, Inc., 259 F.3d 924, 928-29 (8th Cir. 2001).

[8] The plaintiff notes that he "anticipates filing a motion to compel such discovery in the near future."

9

John Deere pays "substantially less" than his pay for employment with the defendant prior to the demotion. The plaintiff also points out that he was entitled to bonuses in his pre-demoted employment with the defendant that he is not entitled to at John Deere. Moreover, the plaintiff asserts that by adding a claim for constructive discharge by way of amending the Complaint, calculations for future wage loss are highly relevant.

The court finds that Mr. Miller's testimony and reports should not be excluded pursuant to Daubert. First, the plaintiff has provided support for the contention that Mr. Miller's method of arriving at his calculations, the "total offset method," is an acceptable one in this jurisdiction. See e.g. Prine v. Sioux City Community School Dist., 95 F. Supp. 2d 1005, 1014-15 (N.D. Iowa 2000); Gleason v. Kueker, 641 N.W.2d 553, 556 (Iowa Ct. App. 2001) (noting that although the Iowa Supreme Court had not "explicitly mandated a particular methodology, it has affirmed the use of the total offset approach where there is evidence from which to conclude that the discount and inflation rates are the same"). Second, the court agrees with the plaintiff that the defendant's attacks, aimed at the information relied upon by Mr. Miller as a basis for forming his opinions and calculations, should be directed at the weight to be given by the fact-finder to Mr. Miller's testimony and reports, rather than at their admissibility. Finally, because the court has granted the plaintiff's motion to amend the Complaint to include a claim for constructive discharge, evidence concerning the plaintiff's future lost wages is relevant.

### III. Plaintiff's Motion to Compel and Request for Sanctions

The plaintiff moves to compel the depositions of Greg Anderson, Jerry Bingham, and Pete Nani, who are the defendant's president and regional managers. In support of his motion to compel, the plaintiff contends that "each of these individuals are managers who had a significant part in the decision to demote [the plaintiff], and are therefore parties to this litigation." "Because they are parties," the plaintiff argues, "[the defendant] must produce them in Iowa for deposition." Mr. Anderson is the defendant's president, and counsel for the defendant "has indicated orally, but not in writing that it was Mr. Anderson

who determined [the plaintiff] would be demoted and to which position he would be demoted.[9]" The plaintiff asserts that Mr. Nani is a party because he promoted the plaintiff prior to his demotion, and because at least two individuals have identified Mr. Nani as being the individual who made the decision to demote the plaintiff and decided to which position he would be demoted.[10] In regard to Mr. Bingham, the plaintiff contends that he is a party because he was the regional manager at the time that "a new rule was instituted prohibiting Second Assistant Managers from closing the store, giving [the defendant] motive to demote [the plaintiff], rather than other managers."

The defendant has refused to produce these three individuals for depositions in Iowa. The plaintiff states that he first made a request to depose Mr. Bingham on May 24, 2005, and scheduled such deposition for July 8, 2005 in Dubuque, Iowa, sending a Notice of Deposition to counsel for the defendant. Counsel for the defendant wrote to counsel for the plaintiff on June 13, 2005, indicating that the defendant would not produce Mr. Bingham, because he lives and works in Houston, Texas. On June 16, 2005, counsel for the plaintiff again requested that the defendant produce Mr. Bingham for deposition, and the defendant again responded that it would not produce Mr. Bingham.[11] Mr. Bingham did not appear for the July 8, 2005 deposition. Counsel for the defendant again notified counsel for the plaintiff that it would not produce Mr. Bingham,

---

[9] The defendant, in its resistance to the plaintiff's motion to compel, admits that "Mr. Anderson did make the decision to demote [the plaintiff], but Pete Nani made the decision to place him in the position of Reconditioning Manager."

[10] Specifically, the plaintiff asserts that Kevin Welte and Steve Hofftender indicated in their depositions that Mr. Nani was responsible for the decision to demote the plaintiff. Mr. Hofftender further testified that Mr. Nani would have knowledge about how bonuses are distributed.

[11] In its resistance to the plaintiff's motion to compel, the defendant asserts that it informed the plaintiff "in three separate communications that Mr. Bingham would not appear on July 8, since [the plaintiff] had failed to subpoena Mr. Bingham and was attempting to require Mr. Bingham to travel more than 100 miles for his deposition."

Mr. Anderson, or Mr. Nani, "indicating that [the three individuals were] not within 100 miles of Iowa." In addition to his motion to compel the defendant to produce these three individuals for deposition, the plaintiff seeks $1,000.00 in sanctions, "representing [counsel for the plaintiff's] time in preparing for Mr. Bingham's deposition, attending the deposition Mr. Bingham did not appear for, and for preparing this Motion to Compel."

The defendant resists, arguing that (1) Mr. Anderson, Mr. Bingham, and Mr. Nani are not "parties to this litigation," as suggested by the plaintiff; (2) the plaintiff's motion to compel should be denied for failure to cite to any relevant authority in support of the motion; (3) even if the plaintiff was to subpoena Mr. Bingham or Mr. Nani in Dubuque, the Federal Rules of Civil Procedure would require that the subpoena be quashed; and (4) Mr. Anderson, as an officer of the defendant, should be deposed, "if at all, near where he works or resides." First, the defendant argues that none of the three individuals in question are parties to this litigation. Specifically, the defendant argues that an employee does not become a "party" simply because they may have relevant testimony.[12] In regard to Mr. Anderson, the defendant argues that while, as an officer, Mr. Anderson may be treated "differently than an ordinary witness, that distinction does not make him a 'party to this litigation.'" The defendant further argues that even if the three individuals were "parties," the plaintiff's assertion that the defendant should produce them for deposition in Iowa is incorrect. The defendant notes that "numerous federal courts have found" that "a defendant may insist upon being deposed in the district where he resides."[13] Counsel for the defendant has advised the plaintiff's counsel that no subpoena will be necessary for Mr. Anderson's deposition. However, the defendant has offered only to produce

---

[12] The defendant asserts that "the case law is clear that other than an officer, director, or managing agent, 'an employee is treated in the same way as any other witness.'" The defendant cites to Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 187 F.R.D. 578, 587 (D. Minn. 1999) (internal citation omitted).

[13] The defendant cites to Undraitis v. Luka, 142 F.R.D. 675, 676 (N.D. Ind. 1992); Pinkham v. Paul, 91 F.R.D. 613, 615 (D. Me. 1981).

Mr. Anderson for deposition near his office in Malden, Massachusetts, or near his home in Lattingtown, New York, as Mr. Anderson "travels to Dubuque only once per year." The defendant asserts finally that Mr. Anderson's testimony is "of marginal relevance."[14]

Fed. R. Civ. P. 26(c)(2) "permits the court to regulate discovery by imposing 'specified terms and conditions, including a designation of the time and place.'" Undraitis v. Luka, 142 F.R.D. 675, 676 (N.D. Ind. 1992). The district court has great discretion in designating the location of taking a deposition. Thompson v. Sun Oil Co., 523 F.2d 647, 650 (8th Cir. 1975). The rules of procedure do not specify where depositions may take place, and the court may enter a protective order concerning location to avoid "undue burden or expense." Fed. R. Civ. P. 26©); Afram Export Corp. v. Metallugiki Halyps, S.A., 772 F.2d 1358, 1365 (7th Cir. 1985).

Depositions of a corporation by its agent and officers should ordinarily be taken at its principal place of business. Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979); Zuckert v. Berkliff Corp., 96 F.R.D. 161, 162 (C.D. Ill. 1982); 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2112, at 410 (1970 & Supp. 1991). This is particularly true when the corporation is a defendant. Dunn v. Standard Fire Ins. Co., 92 F.R.D. 31, 32 (E.D. Tenn. 1981); Zuckert, 96 F.R.D. at 162. This is not an ironclad rule, however, and is subject to modification when, in the opinion of the court, fairness, judicial economy, and convenience to the parties require a different location. Sonitrol Dist. Corp. v. Security Controls, Inc., 113 F.R.D. 160, 160 (E.D. Mich. 1986); Baker v. Standard Ind., Inc., 55 F.R.D. 178, 179 (D.P.R. 1972); 8 C. Wright & A. Miller § 2112, at 410.

---

[14] Specifically, the defendant asserts that while it was Mr. Anderson's decision to demote the plaintiff, this information is irrelevant because the plaintiff stated in his deposition that he was not claiming that the demotion was discriminatory.

The plaintiff's motion to compel the three witnesses in question to be produced for depositions in Dubuque, Iowa, is denied. In regard to Mr. Bingham and Mr. Nani, the general rule is that "a plaintiff may be required to attend a deposition in the district where the case was filed, but a defendant may insist upon being deposed in the district where he resides." Undraitis v. Luka, 142 F.R.D. 675, 676 (N.D. Ind. 1992). "This general maxim is based on the theory that the plaintiff has chosen the forum voluntarily and should expect to appear for any legal proceedings but that the defendant is an involuntary participant." Undraitis, 142 F.R.D. at 676. While it is true that the plaintiff could attempt to subpoena Mr. Bingham and Mr. Nani for depositions in Dubuque, the court notes that it is hopeful that the parties can coordinate the taking of Mr. Nani's and Mr. Bingham's depositions near their residences or places of business without the use of subpoenas. The court further notes that any subpoena requiring either Mr. Bingham or Mr. Nani to travel to Dubuque for purposes of taking their depositions will be quashed.[15]

In regard to Mr. Anderson, the court finds that although Mr. Anderson is an officer of the defendant and the party responsible for demoting the plaintiff, his deposition should be taken near his home or place of business rather than in Dubuque, Iowa. First, the plaintiff has made no allegation, and there is no indication in the record, that the

---

[15] Fed. R. Civ. P. 45(c)(3)(A) states:
> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person . . .

The plaintiff has made no showing that either Mr. Bingham or Mr. Nani are "parties" or officers of a party in this litigation.

defendant's "principal place of business" is in Dubuque, Iowa.[16] Accordingly, it is not at all clear that the general rule, that "depositions of a corporation by its agent and officers should ordinarily be taken at its principal place of business," is here applicable. Even assuming that the rule would apply, the court finds that the circumstances, including the fact that Mr. Anderson only travels to Dubuque, Iowa once a year and works and resides in Massachusetts and New York, make it such that Mr. Anderson should be deposed near his residence or usual workplace, rather than Dubuque, Iowa. See Sonitrol Dist. Corp. v. Security Controls, Inc., 113 F.R.D. 160, 160 (E.D. Mich. 1986); Baker v. Standard Ind., Inc., 55 F.R.D. 178, 179 (D.P.R. 1972); 8 C. Wright & A. Miller § 2112, at 410.

Finally, the plaintiff seeks sanctions in the amount of $1,000.00, "representing [c]ounsel's time in preparing for Mr. Bingham's deposition, attending the deposition Mr. Bingham did not appear for, and for preparing this [m]otion to [c]ompel." Because counsel for the plaintiff was notified on three separate occasions that Mr. Bingham would not be appearing, and further because the plaintiff should have had no expectation that Mr. Bingham would so appear, as the defendant had no legal obligation to produce him as set forth above, the plaintiff's request for sanctions is denied.

## IV. Defendant's Second Motion to Compel

The defendant moves for an Order compelling the plaintiff to produce (1) the plaintiff's recent pay records; and (2) "detailed information regarding cases in which [the plaintiff's] expert has testified during the past four years."[17] In regard to the plaintiff's

---

[16] The Complaint merely states that the defendant "is and at all times material hereto . . . a corporation doing business in Dubuque County, Iowa . . ."

[17] The plaintiff's resistance indicates that the plaintiff provided the information requested by the defendant concerning the plaintiff's expert on August 16, 2005. The court is satisfied that the information provided to the defendant complies with the plaintiff's obligations under Fed. R. Civ. P. 26(a)(2)(B). For that reason, the defendant's motion to compel information concerning cases in which the plaintiff's expert has testified is denied as moot.

recent pay records, the defendant asserts that pursuant to Fed. R. Civ. P. 26(e)(1), the plaintiff is required to supplement his response to requests for production concerning his post-termination earnings and benefits from John Deere, Per Mar Security Services and Scott Siegworth.[18] The defendant further asserts that it is entitled to updated responses concerning any pay increases, benefits, bonuses and other compensation that the plaintiff has received since he left the defendant's employ. The defendant argues that information concerning the plaintiff's pay is "clearly relevant" because the plaintiff's expert, in calculating lost wages, has assumed that the plaintiff works only 40 hours per week. According to the defendant, however, the plaintiff himself testified at his deposition that he averages about 48 hours per week and was receiving overtime pay. The defendant argues therefore, that true, accurate, and updated information concerning the plaintiff's wages is certainly necessary in order for the defendant to determine whether the plaintiff's overtime employment at John Deere, and "moonlighting income" from Per Mar Security and Siegworth, are continuing and what impact that income may have on the plaintiff's claim for lost wages.

In the plaintiff's resistance to the defendant's second motion to compel, the plaintiff asserts that (1) he has "sent an employee earnings report from John Deere Dubuque Works to [the defendant] on August 23, 2005, detailing hours worked and compensation paid from John Deere through July 24, 2005"; (2) he has "faxed documentation from Scott Siegworth on August 23, 2005, regarding compensation received from Mr. Siegworth," and "also sent the documentation via United States mail"; and (3) the defendant has received the requested Per Mar information directly from Per Mar upon the defendant's subpoena to

---

[18] The defendant notes that the plaintiff did not even disclose his employment with Scott Siegworth, but rather, that the defendant learned of such employment via the deposition testimony of the plaintiff's step-daughter. The defendant further notes that while the plaintiff subsequently supplemented his interrogatory answers to provide some information about his employment with Mr. Siegworth, he has not provided documents or specifics concerning the amounts he has been paid for that employment.

Per Mar. The defendant's motion to compel updated information concerning the plaintiff's earnings in employment subsequent to his leaving the defendant's employ is granted. The court notes that the plaintiff's supplementation of discovery, as accounted for in its resistance, appears in large part to satisfy the requests for information set forth in the defendant's motion to compel. However, the court grants the defendant's motion to compel to the extent that such requests have not been satisfied, and because the plaintiff has a continuing obligation to supplement this information.[19]

## V. Defendant's Motion for Extension of Time

The defendant filed a motion for extension of time to designate an expert and for the plaintiff to designate a rebuttal expert. The defendant asserts that such extensions are necessary because the defendant's choice to retain an expert is dependent upon the court's determination of the defendant's motion to strike the plaintiff's expert. Specifically, if the court denies the defendant's motion to strike the plaintiff's expert, the defendant needs more time to designate an expert, and consequently the plaintiff will need more time to designate a rebuttal expert. The defendant's motion is granted as requested.

Upon the foregoing,

IT IS ORDERED that (1) the defendant's motion to strike the plaintiff's expert witness (docket number 20) is denied; (2) the defendant's second motion to compel (docket number 24) is granted in part and denied in part as set forth in the body of this Order; (3) the plaintiff's motion to compel and request for sanctions (docket number 23) is denied; (4) the plaintiff's motion to amend/correct the complaint (docket number 29) is granted; and (5) the defendant's motion for extension of time (docket number 31) is granted: the defendant's deadline to designate an expert is extended 30 days from the date of this

---

[19] Specifically, the court finds that information concerning the plaintiff's pay is both relevant and discoverable, and the plaintiff therefore has a continuing obligation to supplement the record concerning such information.

Order, and the plaintiff's deadline to designate a rebuttal expert is extended to 30 days from the date that the defendant's designations are due.

September 7, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT